UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
STEVEN JAMES PETERSON and
COREY MARIE PETERSON,
    Debtors.                                           No. 7-07-13301 SA

MIDTOWN INSURANCE, LLC. AND
PATIENT CARE SERVICES, INC.
    Plaintiffs,
v.                                                         Adv. No. 08-1042 S
STEVEN JAMES PETERSON and
COREY MARIE PETERSON,
    Defendants.

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiffs' Motion for Summary Judgment filed on November 5, 2008. Doc 22. Defendants did not file a response. This is a core proceeding to determine the dischargeability of a debt, and counterclaims thereto. 28 U.S.C. § 157(b)(2)(I).

Although Defendants did not respond to the Motion, the Court must still review it to determine whether Plaintiffs are entitled to judgment as a matter of law. See Bankruptcy Rule 7056(c).

N.M. L.B.R. 7056-1 provides, in part:

> A memorandum in opposition to the motion [for summary judgment] shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted unless specifically controverted.

Because Defendants filed no memorandum in opposition to the Motion, the Plaintiffs' Statement of Undisputed Material Facts is deemed admitted. Therefore, the Court finds as follows:

1. Patient Care sold or rented medical supplies and equipment to third parties throughout the country.

2. Prior to September, 2002, defendants owned 100% of the common stock of Patient Care.

3. On or about September 5, 2002, Daniel Lee Gelb entered into a letter agreement with Mr. Peterson and Patient Care (the "Letter Agreement"), pursuant to which, inter alia, Mr. Gelb obtained an option to purchase, from Patient Care, 55% of the common stock of Patient Care for $150,000, together with an option to purchase an additional 20% of the common stock of Patient Care from Mr. Peterson for an additional $150,000.

4. Plaintiffs never assumed any of Mr. Gelb's rights or obligations under the Letter Agreement or any other contract between Mr. Gelb and Mr. Peterson.

5. At about the same time, a company owned by Mr. Gelb, Plaza I, Inc. ("Plaza I") began purchasing or "factoring" Patient Care's accounts receivable.

6. In late October or early November, 2004, Mr. Gelb discovered that Mr. Peterson had fabricated invoices and sold them to Plaza I.

7. When he discovered the fraud, Mr. Gelb confronted Mr. Peterson. At a lunch meeting on or about November 4, 2004, Mr. Gelb suggested that Mr. Peterson transfer to Mr. Gelb 1,667 shares of his common stock in Patient Care (representing 75% of the total outstanding shares), as partial compensation for the losses caused by the fraud.

8. Mr. Peterson agreed to the proposal.

9. As of November 5, 2004, Mr. Peterson resigned as a director and officer of Patient Care, but continued to work with Patient Care as a consultant.

10. On or about the December 6, 2004, Peterson converted and embezzled $112,137.78 from Patient Care (the "Embezzled Funds").

11. Peterson accomplished the embezzlement by opening a new bank account in the name of Patient Care, showing himself as the only signatory, depositing the Embezzled Funds in the new account, and then withdrawing the funds and using them for personal purposes.

12. Peterson admits that he stole the Embezzled Funds from Plaintiffs.

13. Mr. Peterson was convicted of embezzlement, and is on probation.

14. On or about June 1, 2005 Midtown purchased all of Patient Care's assets that were properly assignable. Thus, either

Patient Care or Midtown owns the claims at issue in this adversary proceeding.

15. Peterson's fraudulent activity ended up costing Plaza I several million dollars, because many of the accounts receivable Patient Care sold to Plaza I were uncollectible, and Patient Care was unable to make payment of approximately $175,000 per month under the equipment leases to Plaza I.

16. While the exact amount of damage suffered by Plaza I is difficult to quantify, the damages exceed, at a minimum, $2,000,000.

17. Plaza I has transferred its claim for damages against Mr. Peterson to the Plaintiffs.

The Court cannot find from the current record that Steven Peterson and Corey Peterson were married at the time of the crime, that she had anything to do with the crime, or that she benefitted from the crime. Nothing in the summary judgment motion addresses these facts, and these facts were denied in the answer to the complaint.

The Court finds that the Counterclaim in this case consists of two counts arising from the same transaction, namely the transfer of stock and control of the Petersons' former business named Patient Care Services (the "Business"). The first count is entitled "Debt owed and Money due" and seeks $85,000 allegedly unpaid from the sale of the Business. The second count is

entitled "Breach of Contract" and claims that the Petersons have been paid only a portion of the amount due them under the stock purchase agreement.

**CONCLUSIONS OF LAW**

Bankruptcy Code § 523(a)(4) states that "A discharge under section 727 ... does not discharge an individual debtor from any debt – ... (4) for ... embezzlement." Embezzlement consists of the embezzling or converting to one's own use of anything of value, with which he or she has been entrusted, with fraudulent intent to deprive the owner thereof. New Mexico v. Schifani, 92 N.M. 127, 131, 584 P.2d 174, 178 (Ct. App. 1978)(Citations omitted.)

Steven Peterson admits the underlying facts that constituted the embezzlement. He was found guilty of embezzlement, and is on probation. The debt for the embezzled funds is nondischargeable as to Steven Peterson. As to Corey Peterson the Court cannot determine at this time if the debt for embezzlement is dischargeable[1].

---

[1] Unless Plaintiffs are seeking to collect from Corey Peterson's separate after-acquired property, the Court is not sure that it matters whether Plaintiffs obtain a judgment against her. If Plaintiffs' claim is a community claim, it would appear that under § 524(a)(3) the after-acquired community property will remain liable for Mr. Peterson's non-dischargeable debt. See Federal Deposit Ins. Corp. v. Soderling (In re Soderling), 998 F.2d 730, 734 (9th Cir. 1993)(Under California law, husband's crime was community claim and all community property will be potentially liable for the debt.); Midi Music Center, Inc. v.
(continued...)

Case 08-01042-s    Doc 24    Filed 01/16/09    Entered 01/16/09 09:33:22 Page 5 of 8

Plaintiffs' have also established that they are not liable on the Counterclaim for at least three reasons. First, the stock purchase agreement was entered into by Mr. Gelb and Mr. Peterson. It is undisputed that neither Plaintiff assumed any of Mr. Gelb's rights or obligations under the Letter Agreement or any other contract between Mr. Gelb and Mr. Peterson (Fact 4). Therefore, there was no contract between Plaintiffs and the Petersons and Plaintiffs are not the proper counter-defendants. Second, the undisputed facts show that Mr. Peterson caused in excess of $2,000,000 in damages to Plaza I (fact 16) and that Plaza I has assigned its rights to Plaintiffs (fact 17). Under the doctrine

---

[1](...continued)
Smith (In re Smith), 140 B.R. 904, 909 (Bankr. D. N.M. 1992) ("Once the Court has determined that only one spouse has committed acts which make the debts nondischargeable, the community property is liable. Only the separate property of the innocent spouse will not be available to satisfy creditors."); Arcadia Farms Ltd. v. Rollinson (In re Rollinson), 332 B.R. 879, 883 (Bankr. D. Ariz. 2005):
> Normally, the discharge causes community property acquired post-petition to be free from pre-petition community claims. Code § 524(a)(3). But, if either the community debt is excepted from discharge under § 523, or if the other spouse was denied or would be denied a discharge, the discharge does not immunize such post-petition community property from the community debt. This happens automatically by operation of Code §§ 524(a)(3) and (b), without the necessity for any determination as to the knowledge or participation of the "innocent" spouse, so long as the debt is community debt.

See also Joann Henderson, For Better or Worse: Liability of Community Property after Bankruptcy, 29 Idaho L. Rev. 893, 898 (1992)(Both spouses must be innocent in order to gain a community discharge.)

of setoff[2] Plaintiffs' claims would be subtracted from Mr. Peterson's claim.  This would result in a reduction of Mr. Peterson's claim to $0.  Third, from the undisputed facts it is clear that the transfer of the Business was not pursuant to the stock purchase agreement, but rather a partial payment for Mr. Peterson's creating false invoices and selling them to Plaza I. In other words, the parties abandoned the first contract (the stock purchase agreement) and substituted a second contract for it, which was fully performed.  Therefore, there is no money due, and no breach of the original contract.

**SUMMARY**

The Court will enter an Order partially granting the Motion for Summary Judgment and declaring Steven Peterson's debt for embezzlement to be nondischargeable.  The Order will deny the Motion for Summary Judgment as to Corey Peterson.  The Order will also dismiss the Counterclaims with prejudice.  The Court will set a status conference to discuss remaining issues.

---

[2] The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." Studley v. Boylston Nat. Bank, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913).  Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.
Citizens Bank of Maryland v. Strumpf,516 U.S. 16, 18 (1995).

Case 08-01042-s    Doc 24    Filed 01/16/09    Entered 01/16/09 09:33:22 Page 7 of 8

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: January 16, 2009

copies to:

David T Thuma
Attorney for Plaintiffs
Jacobvitz, Thuma & Walker
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Ronald E Holmes
Attorney for Defendants
112 Edith Blvd NE
Albuquerque, NM 87102-3524